Slip Op. 21-108

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| VOESTALPINE USA CORP. AND BILSTEIN COLD ROLLED STEEL LP, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Mark A. Barnett, Chief Judge <br> Consol. Court No. 20-03829 |

## OPINION AND ORDER

[Granting Defendant's motion to dismiss for lack of subject matter jurisdiction upon finding that Plaintiffs' claim is moot.]

Dated: August 26, 2021

Lewis E. Leibowitz, The Law Office of Lewis E. Leibowitz, of Washington, DC, for Plaintiffs.

Aimee Lee, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director. Of counsel on the brief were Anthony Saler, Assistant Division Chief, and Kenneth S. Kessler, Senior Counsel, Office of the Chief Counsel, Bureau of Industry and Security, U.S. Department of Commerce, of Washington, DC, and Yelena Slepak, Senior Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of Washington, DC.

Barnett, Chief Judge: In this consolidated action, Plaintiffs VoestAlpine USA

Corp. ("VoestAlpine") and Bilstein Cold Rolled Steel LP ("Bilstein") seek a court order

requiring reliquidation of two entries of steel merchandise exclusive of duties imposed

pursuant to section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862 (2018).[1]

*See* Am. Compl. pp. 4–5 (prayer for relief), ECF No. 8; Compl. p. 5, *VoestAlpine USA*

*Corp. and Bilstein Cold Rolled Steel LP v. United States*, Court No. 20-cv-03840 ("Ct.

No. 20-3840") (CIT Nov. 23, 2020).  Plaintiffs claim that reliquidation is merited based

on the U.S. Department of Commerce's ("Commerce" or "the agency") approval of an

exclusion request containing an invalid 10-digit subheading of the Harmonized Tariff

Schedule of the United States ("HTSUS").  *See* Am. Compl. ¶¶ 10–14.  Plaintiffs allege

jurisdiction pursuant to 28 U.S.C. § 1581(i)(2) and (4) (2018).[2]  *See id.* ¶ 4.

Defendant United States ("the Government") moves to dismiss the consolidated

action pursuant to U.S. Court of International Trade ("CIT") Rules 12(b)(1) and 12(b)(6).

Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 19; *see also* Def.'s Reply Br. in Supp. of

its Mot. to Dismiss ("Def.'s Reply"), ECF No. 23.  The Government presents several

grounds for dismissal.  Most relevant here, the Government argues that the court lacks

jurisdiction pursuant to 28 U.S.C. § 1581(i) (referred to as "(i) jurisdiction") because

Plaintiffs had a remedy pursuant to 28 U.S.C. § 1581(a) (referred to as "(a)

---

[1] Citations to the U.S. Code are to the 2018 version, unless otherwise stated.

[2] Section 1581(i) grants the court jurisdiction to entertain "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— . . . (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section."  28 U.S.C. § 1581(i)(2),(4).

jurisdiction")[3] under which they could have sought a refund of section 232 duties by first filing a protest with U.S. Customs and Border Protection ("CBP" or "Customs"). Def.'s Mot. at 2–3, 16–22; Def.'s Reply at 8–14.  The Government also argues that, to the extent the court finds (i) jurisdiction appropriate, any challenge to Commerce's exclusion decision is moot because Commerce has approved a second exclusion containing a valid HTSUS subheading with retroactive application.  Def.'s Mot. at 22–24; Def.'s Reply at 15–16.[4]

Plaintiffs oppose the motion.  Pls.' Resp. to Def.'s Mot. to Dismiss Compls. ("Pls.' Resp."), ECF No. 21; Pls.' Surreply to Def.'s Mot. to Dismiss ("Pls.' Surreply"), ECF No. 25.

For the following reasons, the court finds that Plaintiffs' claim is moot and therefore grants the Government's motion to dismiss for lack of subject matter jurisdiction.

### STANDARD OF REVIEW

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95

---

[3] Section 1581(a) grants the court "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930," 19 U.S.C. § 1515.  28 U.S.C. § 1581(a).

[4] The Government argues in the alternative that Plaintiffs failed to state a claim upon which relief may be granted because Commerce's original exclusion decision was not the proximate cause of Plaintiffs' alleged injury, Plaintiffs were not prejudiced by Commerce's alleged error, and Plaintiffs' claim against Commerce is time-barred.  *See* Def.'s Mot. at 22–28; Def.'s Reply at 14–23.  Because the court dismisses the action on mootness grounds, it need not address these arguments.

(1998).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Plaintiffs bear the burden of establishing subject-matter jurisdiction.  *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  When, as here, the plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1581(i), it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate."  *Erwin Hymer Group N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citation omitted).  Because the pending motion to dismiss rests on the availability of (a) jurisdiction and therefore challenges the existence of (i) jurisdiction, "the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true."  *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).  To resolve the pending motion to dismiss, the "court is not restricted to the face of the pleadings" and may, if necessary, "review evidence extrinsic to the pleadings."  *Id.* (citation omitted).

Article III of the U.S. Constitution also limits the court to resolving "legal questions only in the context of actual 'Cases' or 'Controversies.'"  *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting U.S. Const., Art. III, § 2).  Thus, "[i]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed as moot."  *Nasatka v. Delta Scientific Corp.*, 58 F.3d 1578, 1580 (Fed. Cir. 1995) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)); *see also Jem D Int'l (Michigan)*

*Inc. USA v. United States*, 44 CIT __, __, 470 F. Supp. 3d 1374, 1380 (2020) (mootness

precludes the court's consideration of a claim "when 'events have so transpired that the

[court's] decision will . . . [not] affect the parties' rights'") (first alteration in original)

(quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

<h2 align="center">BACKGROUND</h2>

### I.      The Imposition of Section 232 Duties and the Exclusion Process

"Section 232 of the Trade Expansion Act of 1962 authorizes the President to

restrict imports of goods to '[s]afeguard[ ] national security.'"  *N. Am. Interpipe, Inc. v.*

*United States*, Slip Op. 21-66, 2021 WL 2106427, at *1 (CIT May 25, 2021) (alterations

in original) (quoting 19 U.S.C. § 1862).  Pursuant to that authority, on March 8, 2018,

the President announced a 25 percent tariff on imports of certain steel articles, effective

March 23, 2018.  *See* Proclamation 9705 (Mar. 8, 2018) ("Proc. 9705"), cl. 1–2, 83 Fed.

Reg. 11,625 (Mar. 15, 2018).  Proclamation 9705 identified certain six-digit tariff

provisions that would be subject to section 232 duties.  *Id.*, cl. 1.[5]  In order to implement

the increased duty rates, Proclamation 9705 modified subchapter III of chapter 99 of the

HTSUS to add a new subheading, 9903.80.01, which provided for an additional 25

percent tariff on "all entries of iron or steel products from all countries, except products

---

[5] The subheadings included "7206.10 through 7216.50, 7216.99 through 7301.10,
7302.10, 7302.40 through 7302.90, and 7304.10 through 7306.90, including any
subsequent revisions to these . . . classifications."  Proc. 9705, cl. 1; *see also id.*, Annex
(U.S. Note 16(b) (enumerating the affected tariff provisions)).  The covered articles are
subject to section 232 duties in addition to other applicable duties.  *Id.*, cl. 2.

of Canada and of Mexico, classifiable in the headings or subheadings enumerated in

this note." *Id.*, Annex (U.S. Note 16(a)).

Proclamation 9705 authorized Commerce "to provide relief from the additional

duties . . . for any steel article determined not to be produced in the United States in a

sufficient and reasonably available amount or of a satisfactory quality" and "to provide

such relief based upon specific national security considerations." *Id.*, cl. 3.[6]  Commerce

must convey all exclusion determinations "to [CBP] for implementation . . . at the earliest

possible opportunity." *Id.*, Annex (U.S. Note 16(c)).  Importers are required to "report

information concerning any applicable exclusion granted by Commerce in such form as

CBP may require." *Id.*, Annex (U.S. Note 16(d)).

In 2018, Commerce's Bureau of Industry and Security ("BIS") amended 15

C.F.R. pt. 705 to include rules for the administration of the exclusion process.  *See*

*generally Requirements for Submissions Requesting Exclusions From the Remedies*

*Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States*

*and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections*

---

[6] The President twice amended clause three.  *See* Proclamation 9711 (Mar. 22, 2018) ("Proc. 9711") cl. 7, 83 Fed. Reg. 13,361 (Mar. 28, 2018) (amending clause three to provide, *inter alia*, that "[f]or merchandise entered on or after the date the directly affected party submitted a request for exclusion, such relief shall be retroactive to the date the request for exclusion was posted for public comment"); Proclamation 9777 (Aug, 29, 2018) ("Proc. 9777") cl. 5, 83 Fed. Reg. 45,025 (Sept. 4, 2018) (further amending clause three to state, *inter alia*, that "[f]or merchandise entered for consumption, or withdrawn from warehouse for consumption, on or after the date the duty established under this proclamation is effective and with respect to which liquidation is not final," an exclusion from the tariff "shall be retroactive to the date the request for relief was accepted by [Commerce]").

*to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't

Commerce Mar. 19, 2018) (interim final rule) ("*March Regulations*"); *Submissions of*

*Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83

Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) (interim final rule) ("*September*

*Regulations*"); *see also* 15 C.F.R. pt. 705, Suppl. 1 (2019).

 Relevant here, exclusion requests must be filed by an individual or organization

"using steel in business activities . . . in the United States" and include "the submitter's

name, date of submission, and the 10-digit [HTSUS] statistical reporting number."

*March Regulations*, 83 Fed. Reg. at 12,110.  Commerce's approval of an exclusion is

limited to the product specified in the request and the "individual or organization that

submitted the specific exclusion request, unless Commerce approves a broader

application of the [exclusion]."  *Id.*  Companies may "submit[] a request for exclusion of

a product even though an exclusion request submitted for that product by another

requester or that requester was denied or is no longer valid."  *Id.*  Additionally,

"[e]xclusions will generally be approved for one year."  *Id.* at 12,111.  Commerce will

deny "[e]xclusion requests that do not satisfy the [specified] reporting requirements."  *Id.*

 The *September Regulations* revised the exclusion process set forth in the *March*

*Regulations* "to improve the fairness, transparency and efficiency of the exclusion and

objection process" and to "add a rebuttal and surrebuttal process."  83 Fed. Reg. at

46,048.  In the preamble, Commerce explained that it "will not issue a decision granting

an exclusion until CBP confirms that the exclusion is administrable, meaning the

exclusion request designates the correct HTSUS statistical reporting number."  *Id.* at

46,046.  When "a request is denied for HTSUS issues, companies are encouraged to work with CBP to confirm the proper classifications and resubmit."  *Id.* at 46,047.  The *September Regulations* also provide that "[a]ny questions on the refund of duties should be directed to CBP."  *Id.* at 46,059–60.

Both Customs and Commerce issued guidance to importers seeking exclusions. Customs issued several Cargo Systems Messaging Service ("CSMS") messages on the proper submission of approved exclusions.  On May 21, 2018, Customs issued CSMS # 18-000352, which stated that "[o]nly products from importer(s) designated in the product exclusion approved by [Commerce] are eligible for exclusion from the Section 232 measures."  U.S. Customs and Border Prot., CSMS # 18-000352 - Submitting Imports of Products Excluded from Duties on Imports of Steel or Aluminum, https://content. govdelivery.com/accounts/USDHSCBP/bulletins/1f1986e (May 21, 2018, 8:41 AM) ("CSMS # 18-000352").  CSMS # 18-000352 further stated that "[e]xclusions granted by [Commerce] are retroactive on imports to the date the request for exclusion was posted for public comment at Regulations.gov."  *Id.*  Thus, "[t]o request an administrative refund for previous imports of excluded products granted by [Commerce], importers may file a [post summary correction ("PSC")]."  *Id.*  If, however, "the entry has already liquidated, importers may protest the liquidation."  *Id.*  Subsequent CSMS messages reiterated that exclusions may be applied retroactively to unliquidated entries and to entries that have liquidated when the liquidation is nonfinal and the protest period has not expired.  *See* U.S. Customs and Border Prot., CSMS # 42566154 – Section 232 and Section 301 – Extensions Requests, PSCs, and Protest, https://content.govdelivery.com/accounts/

USDHSCBP/bulletins/289820a (May 1, 2020, 5:05 PM) ("CSMS # 42566154"); U.S.

Customs and Border Prot., CSMS # 39633923 - UPDATE: Submitting Imports of

Products Excluded from Duties on Imports of Steel or Aluminum, https://content.

govdelivery.com/accounts/USDHSCBP/bulletins/25cc403 (Sept. 3, 2019, 11:08 AM)

("CSMS # 39633923"); U.S. Customs and Border Prot., CSMS # 18-000378 - UPDATE:

Submitting Imports of Products Excluded from Duties on Imports of Steel or Alumin,

https://content.govdelivery.com/accounts/USDHSCBP/bulletins/1f6cce3 (June 5, 2018,

3:37 PM) ("CSMS # 18-000378").

        In June 2019, Commerce published guidance on the section 232 exclusion

process.  *See 232 Exclusion Process Frequently Asked Questions (FAQs)*, Bureau of

Indus. and Sec., U.S. Dep't Commerce (June 19, 2019), https://www.bis.doc.gov/index.

php/documents/section-232-investigations/2409-section-232-faq/file ("Commerce

FAQs"); *see also* Pls.' Resp., Ex. 2 (providing excerpts from Commerce FAQs).

Therein, Commerce explained that a company in receipt of an approved exclusion

should provide CBP with information concerning the importer of record listed in the

exclusion and the "product exclusion number."  Commerce FAQs at 12.  Commerce

indicated that "an exclusion is granted for one year from the date of signature, or until all

excluded product volume is imported (whichever comes first)."  *Id.*  Companies "cannot

make substantive changes to their exclusion request after submission" but may make

"non-substantive changes," such as changes to the importer of record.  *Id.* at 18.

Commerce further stated that it could revoke a granted exclusion "if there was a

technical issue that resulted in an inadvertent approval."  *Id.* at 13.

Commerce also provided guidance on the resubmission of denied exclusion requests, including requests that were denied for HTSUS errors. *Id.* at 25. Resubmissions may include changes to the importer of record and be tied back "to [the] original submission date for refund purposes." *Id.* An exclusion request that is withdrawn because of an incorrect tariff provision is not eligible for resubmission but must instead "be processed as a new request." *Id.* at 27.

## II.   Factual and Procedural History

On July 10, 2018, Bilstein, the purchaser of steel imported by VoestAlpine, submitted an exclusion request to Commerce that contained a nonexistent ten-digit HTSUS provision and identified the incorrect importer of record. *See* Def.'s Mot., Ex. A at 1 (the exclusion request). Bilstein's exclusion request listed 7225.30.0000, HTSUS, as the tariff provision applicable to the steel article covered by the request. *Id.* (box 1.a)[7] It further listed "Peter Wittwer North America" as the importer of record. *Id.* (box 1.b). Commerce approved this exclusion request on September 28, 2018, with the invalid tariff provision. *See* Def.'s Mot., Ex. B (Commerce's decision memorandum on exclusion request number BIS-2018-0006-25363) ("Exclusion 25363"); Am. Compl. ¶ 10.

---

[7] Bilstein identified the "class of steel product for which the Exclusion [was] sought" as "Carbon and Alloy Flat," Def.'s Mot., Ex. A at 1, and described the product as "Hot Rolled Black C15M Steel," *id.* at 2. Subheading 7225.30, HTSUS, covers "Flat-rolled products of other alloy steel, of a width of 600 mm or more; Other, not further worked than hot-rolled, in coils: Of a thickness of 4.75 mm or more." However, the remaining four digits do not exist in the HTSUS.

VoestAlpine, the importer of record for the relevant entries, made two entries of

steel products on November 17, 2018, referred to herein as "the subject entries."  Def.'s

Mot., Ex. C (entry documentation).[8]  VoestAlpine entered the merchandise under

subheadings 7208.39.0090[9] and 9903.80.01, HTSUS, thereby indicating that the

subject entries were subject to section 232 duties.  *Id.* at ECF pp. 13, 15.  VoestAlpine

paid the applicable duties on or around the time of entry.  Am. Compl. ¶¶ 6–8; Compl.,

¶¶ 6, 8, Ct. No. 20-3840.  CBP liquidated the subject entries on October 18, 2019.

Def.'s Mot., Ex. C at ECF pp. 13, 15.[10]

Plaintiffs assert that they "sought advice from Customs and BIS" regarding the

error(s) in Exclusion 25363 after "becom[ing] aware of the problem in September 2019."

Pls.' Resp. at 15.  On September 2, 2020, BIS informed counsel for Bilstein that in order

to obtain

> retroactive relief on a request that lists an erroneous tariff classification,
> they must file an exclusion request that is functionally identical to the
> original request except for the corrected [HTSUS] Code.  If the new
> request is granted, the requestor may then contact the 232 Help Desk via
> email to declare their intention to open a resubmission case.  [BIS] will
> review the filings to determine whether the resubmitted request is
> functionally identical to the original request and, if approved, issue a new

---

[8] The entry documentation lists the importation date as November 10, 2018, and the
entry date as November 17, 2018.  Def.'s Mot., Ex. C at ECF pp. 13, 15.  Plaintiffs
allege the date of entry as November 12, 2018.  *See* Am. Compl. ¶ 1; Compl. ¶ 1, Ct.
No. 20-3840.

[9] Subheading 7208.39.0090, HTSUS, covers "Flat-rolled products of iron or nonalloy
steel, of a width of 600 mm or more, hot-rolled, not clad, plated or coated: Of a
thickness of less than 3 mm: Other."

[10] Liquidation is defined as "the final computation or ascertainment of duties on entries,"
19 C.F.R. § 159.1, notwithstanding the availability of a protest and judicial review that
can affect the assessed rate of duties, *see Thyssenkrupp Steel N. Am., Inc. v. United
States*, 886 F.3d 1215, 1218 (Fed. Cir. 2018).

> decision memo that allows the requestor to receive retroactive relief dating
> back to the submission date of the original request.

*Id.*, Ex. 3 at 1 (email correspondence between Bilstein and BIS); *see also* Am. Compl.

¶ 13.

On November 2, 2020, Bilstein filed an exclusion request for products covered by

HTSUS subheading 7208.39.0090 designated as a renewal of its original exclusion

request, and which listed VoestAlpine as the importer of record.  Def.'s Mot., Ex. D at 1,

3.  On or around November 2, 2020, BIS "informed Bilstein that it would not approve a

'resubmission' of the exclusion request unless the protest period under 19 U.S.C.

§ 1514 was available."  Am. Compl. ¶ 14; *see also* Pls.' Resp., Ex. 3 at 4 (referring to a

BIS email, dated November 4, 2020, in which BIS apparently indicated "that entries

already liquidated may not be reliquidated to accomplish refunds").

On November 10, 2020, Plaintiffs commenced this lead action through the

concurrent filing of a Summons and Complaint.  Summons, ECF No. 2; Compl., ECF

No. 1.  Plaintiffs filed the Amended Complaint on November 12, 2020.  Am. Compl.

Plaintiffs commenced the member action on November 23, 2020.  Summons, Ct. No.

20-3840 (CIT Nov. 23, 2020); Compl., Ct. No. 20-3840).

On December 11, 2020, Commerce granted Bilstein's second exclusion request.

Def.'s Mot., Ex. E.  Notwithstanding Commerce's guidance that resubmissions would

not be approved when liquidation was final, on January 15, 2021, Commerce made

Bilstein's resubmitted exclusion retroactive to July 10, 2018, the date on which Bilstein

submitted the original exclusion request.  Def.'s Mot., Ex. F (Commerce's decision

memorandum on exclusion request number 155507) ("Exclusion 155507"); *see also*

Pls.' Resp., Ex. 3 at 5 (email dated January 20, 2021 from BIS to counsel for Plaintiffs

regarding BIS's approval of Bilstein's resubmission).

On January 28, 2021, the court consolidated the cases.  Order (Jan. 28, 2021),

ECF No. 14.  On April 26, 2021, the court afforded Plaintiffs the opportunity to "file a

surreply addressing arguments for dismissal raised for the first time in Defendant's

Reply Brief."  Order (Apr. 26, 2021), ECF No. 24.  Plaintiffs filed a surreply on May 17,

2021.  *See* Pls.' Surreply.

**DISCUSSION**

**I.      The Court's Subject Matter Jurisdiction**

**A.      Parties' Contentions**

The Government contends that the "true nature of the action is a challenge to the

assessment of duties at liquidation" and, thus, "[t]he appropriate remedy . . . [was] a

timely protest of the liquidation."  Def.'s Mot. at 17; *see also* Def.'s Reply at 8–9.  The

Government relies on Proclamation 9777 and Customs' guidance, both of which

indicate that filing a protest is necessary "to benefit from exclusion decisions" because

exclusions may only apply to entries for which liquidation is nonfinal.  Def.'s Mot. at 21

(citing Proc. 9777, cl. 5; CSMS # 18-000352; CSMS # 18-000378; CSMS # 39633923;

CSMS # 42566154).  Thus, the Government contends, Plaintiffs should have protested

the liquidation of its entries to "prevent[] liquidation from becoming final while [P]laintiffs

sought to correct the exclusion request with Commerce," and, had they done so and

"CBP denied the protests," Plaintiffs could have commenced an action pursuant to 28 U.S.C. § 1581(a).  Def.'s Mot. at 22.

Plaintiffs contend that "the true nature of this action is a challenge to the approval by BIS of a fatally flawed and therefore useless steel product exclusion."  Pls.' Resp. at 24–25.  Plaintiffs liken the approval of an exclusion with an invalid tariff provision to an exclusion denial, arguing that neither situation is redressable by a protest because there is no Customs decision at issue.  *Id.* at 25; *see also id.*at 26–27 (arguing that section (a) jurisdiction is manifestly inadequate because "Customs cannot remedy the situation").  Plaintiffs contend that "Customs' obligation was and is to collect the [s]ection 232 duties," *id*. at 25, and presenting Exclusion 25363 to CBP would have been futile because CBP would not have applied the exclusion to the subject entries, *id*. at 25–26.  Plaintiffs contend that "the only effective recourse . . . was to seek" Commerce's assistance "in correcting the HTSUS number in the exclusion."  *Id.* at 26.

The Government counters that Customs' decision to assess section 232 duties on the subject entries was amenable to protest.  Def.'s Reply at 10–14.  The Government contends that "a granted exclusion does not automatically apply to an entry and CBP's role in deciding whether the imported merchandise falls within an approved exclusion is not ministerial."  *Id.* at 10; *see also id.* at 13 (explaining that "CBP . . . decides whether the conditions of the exclusion are met and whether the exclusion applies to the merchandise covered by the entries or whether [s]ection 232 duties should be assessed").  The Government also contends that, "in the absence of a valid exclusion," CBP "made a decision as to the 'tariff classification and applicable rate of

duty,'" *id.* at 12, or in other words, that CBP decided "to assess [s]ection 232 duties at liquidation," *id.* at 13

### B.    Analysis

It is well settled that "[a] party may not expand a court's jurisdiction by creative pleading." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (quoting *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)).  Instead, as the Parties have indicated, the court must "look to the true nature of the action . . . in determining jurisdiction of the appeal." *Id.* (quoting same).

In seeking to identify the "true nature of the action," the Government relies on Plaintiffs' requested relief—a refund of section 232 duties to be accomplished through reliquidation of the subject entries.  Def.'s Mot. at 17; Def.'s Reply at 9.  Thus, the Government asserts, "the true nature of the action is a challenge to [CBP's] assessment of duties at liquidation."  Def.'s Mot. at 17.  While Plaintiffs indeed seek a refund of section 232 duties, that relief is predicated on Plaintiffs' request for a court order retroactively applying Exclusion 25363 to the subject entries, which, in turn, is based on Plaintiffs' claim against Commerce.  *See, e.g.*, Am. Compl. ¶¶ 11–14, 20–22; *id.*, pp. 4–5 (prayer for relief).  The operative complaint indicates that Plaintiffs contest Commerce's decision to approve Exclusion 25363 with an invalid HTSUS provision. *See id.* ¶ 3 (identifying BIS as the entity responsible for "evaluating, approving and administering the product exclusion mechanism"); *id.*, ¶¶ 9–14 (discussing the exclusion and Bilstein's attempts to work with BIS to "secure a refund" using BIS's procedures for

resubmission); *id.* ¶ 21 (alleging that "BIS has refused to assist in securing refund of the duties").

Plaintiffs therefore seek to challenge final agency action in the form of Commerce's approval of Exclusion 25363 with the non-existent HTSUS number,[11] which is analogous to actions contesting Commerce's denials of exclusion requests. The court reviews such actions pursuant to 28 U.S.C. § 1581(i)—not 28 U.S.C. § 1581(a).  *See, e.g.*, *JSW Steel (USA) Inc. v. United States*, 44 CIT __, __, 466 F. Supp. 3d 1320, 1327 (2020); *cf. Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004) (stating that "sections 514 and 515 [of the Tariff Act of 1930] do not apply" when "the alleged agency error . . . is on the part of Commerce, and not Customs").  The Government's arguments in favor of (a) jurisdiction are not persuasive.

Section 1581(a) confers on the CIT "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]."  28 U.S.C. § 1581(a).  Section 1515 governs Customs' review of protests.  19 U.S.C. § 1515.  Section 1514 sets forth various rules concerning the filing of protests.  19 U.S.C. § 1514.  Pursuant to section 1514(a),

> *decisions* of the Customs Service, including the legality of all orders and findings entering into the same, as to-- . . . (2) the classification and rate and amount of duties chargeable; [or] . . . (5) the liquidation or reliquidation of an entry . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade.

---

[11] The Government concedes that Commerce's approval of Bilstein's exclusion request constituted "final agency action" pursuant to 5 U.S.C. § 704.  *See* Def.'s Reply at 14.

19 U.S.C. § 1514(a)(2), (5) (emphasis added).

Jurisdiction pursuant to 28 U.S.C. § 1581(a) is available for judicial review of "the denial of a timely, valid protest." *Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1373 (Fed. Cir. 2019) (citing *Thyssenkrupp*, 886 F.3d at 1227). "[I]n order for there to be a protestable decision," however, and, thus, a valid protest giving rise to (a) jurisdiction, "Customs must [have] engage[d] in some sort of decision-making process." *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997) ("*U.S. Shoe CAFC*"), *aff'd sub nom. United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998) ("*U.S. Shoe*").

It is well settled that "Customs' 'merely ministerial' actions are not protestable under 19 U.S.C. § 1514." *Indus. Chems.*, 941 F.3d at 1371 (quoting *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994)). A non-ministerial action "require[es] genuine interpretive or comparable judgments as to what is to be done." *Thyssenkrupp*, 886 F.3d at 1224–25 (citations omitted). Thus, Customs acts in a ministerial capacity when it "passively collects" duties and "performs no active role, . . . undertakes no analysis [or adjudication], issues no directives, [and] imposes no liabilities." *U.S. Shoe*, 523 U.S. at 365 (second alteration in original). A protest is therefore unnecessary when a plaintiff seeks to challenge some aspect of the duties imposed on its entries over which Customs has no control or authority to correct. *See, e.g.*, *id.* (Customs' collection of the harbor maintenance tax did not render a protest necessary to challenge the constitutionality of the tax before the CIT); *Gilda Indus., Inc.*

*v. United States*, 446 F.3d 1271, 1276–77 (Fed. Cir. 2006) (protest not required when the plaintiff challenged the duties imposed on imported merchandise by the U.S. Trade Representative ("USTR") pursuant to section 301 of the Trade Act of 1974 and sought either termination of a section 301 retaliation list or the removal of its products from that list).

The Government's contention that CBP acts in a non-ministerial capacity when it decides whether to apply an exclusion to an entry, *see* Def.'s Mot. at 17–18; Def.'s Reply at 10, 13, even if correct generally, does not support the existence of (a) jurisdiction in this case.  As the Government is aware, Plaintiffs "never claimed an exclusion from [s]ection 232 duties" at or before the time of entry.  Def.'s Reply at 13.  Thus, there was no Customs decision regarding the applicability of an exclusion to form the basis for the court's (a) jurisdiction.  *See* Def.'s Mot., Ex. C (entry summary reflecting the collection of section 232 duties).

To the extent the Government argues that Plaintiffs *should have* submitted Exclusion 25363 prior to making the subject entries such that Plaintiffs *would have* had a remedy pursuant to 28 U.S.C. § 1581(a) in the event Customs rejected the exclusion and denied Plaintiffs' protest, *see* Def.'s Reply at 13–14, that argument overlooks that Plaintiffs were not in possession of a facially valid exclusion.  Even if the Government's approach might prevail when an importer possesses a facially valid exclusion and affords CBP no opportunity to consider it, here, Customs would have been constrained "to reject the application of [the] exclusion" because the tariff provision in Exclusion 25363 did not match the provision listed on the entry documentation and was otherwise

invalid.  Pls.' Resp. at 25; *see also March Regulations*, 83 Fed. Reg. at 12,110 (stating

that exclusions are product-specific).  There would have been nothing to contest via

protest or to litigate before the CIT.

In sum, a Commerce error in a section 232 exclusion is not redressable by a

Customs protest because Customs has no control over—or authority to alter—the

contents of an exclusion.  *See* Proc. 9705, cl. 3 (locating authority over exclusions

within Commerce).  Because a protest was incapable of affording Plaintiffs the relief

they seek, it would have been a manifestly inadequate remedy to the extent it was

available.  *See Sunpreme*, 892 F.3d at 1193–94 ("[T]o be manifestly inadequate, the

protest must be an 'exercise in futility, or incapable of producing any result; failing utterly

of the desired end through intrinsic defect; useless, ineffectual, vain.'" (quoting *Hartford

Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008)).[12]

---

[12] The Government impliedly concedes this argument through its representation that a
protest "would have prevented liquidation from becoming final while [P]laintiffs *sought to
correct the exclusion request with Commerce*."  Def.'s Mot. at 22 (emphasis added).
While the Government argues that "[s]uch a remedy would not have been manifestly
inadequate," *id.*, that argument overlooks that the protest itself would not provide the
remedy but that filing a protest could have given Plaintiffs the time to obtain a remedy
*from Commerce*.  Therein lies the distinction between the protest mechanism being
used by Customs purely as an administrative mechanism for preventing finality and a
protest that functions as a predicate for (a) jurisdiction; the two are not necessarily the
same.  *See Indus. Chems.*, 941 F.3d at 1371–73 (emphasizing that the CIT does not
have (a) jurisdiction to review any protest denial, but only "the denial of a timely, valid
protest").  The court need not consider whether, in this case, a denied protest regarding
an exclusion, used as an administrative mechanism to prevent finality, would be
sufficient to vest the court with (a) jurisdiction.  Rather, the court finds that any
possibility of (a) jurisdiction over such a claim does not divest the court of (i) jurisdiction
in this case because Plaintiffs' case is dependent upon Plaintiffs' claim against
Commerce.

The Government's second argument is equally unconvincing.  The Government argues that, "in the absence of a valid exclusion being presented by an eligible importer," Customs "made a decision as to the 'tariff classification and applicable rate of duty.'"  Def.'s Reply at 12 (quoting *U.S. Shoe CAFC*, 114 F.3d at 1569).  According to the Government, CBP's role in "issu[ing] directives as to what an importer needed to do to claim a duty exclusion" rendered CBP "no mere passive collector of duties."  *Id.* CBP's provision of guidance as to how to claim an exclusion is, however, immaterial to the identification of an actual protestable decision when no exclusion is presented.  The Government fails to reconcile its conclusory assertion that "CBP made a decision to assess [s]ection 232 duties," Def.'s Reply at 13, with the entry documentation demonstrating that VoestAlpine imported the steel merchandise as subject to section 232 duties and deposited the duties before Customs liquidated the entries *as entered*, *see* Def.'s Mot., Ex. C; *id.* at 12–13 (recognizing that VoestAlpine deposited the section 232 duties "[c]onsistent with" the representations in the entry documentation and "CBP liquidated the entries as entered").  Thus, Customs' collection of section 232 duties is analogous to Customs' collection of the harbor maintenance tax ("HMT") at issue in *U.S. Shoe*.  *See U.S. Shoe CAFC*, 114 F.3d at 1569 (finding (i) jurisdiction when Customs "passively collect[ed]" the HMT "in the amount required by statute," Customs did not need to "notify exporters of the need to pay the HMT," and an "exporter [paid] all accumulated fees on a quarterly basis by simply mailing a check or money order to Customs along with appropriate forms").

Similarly, in *Xerox Corp. v. United States*, the U.S. Court of Appeals for the

Federal Circuit ("Federal Circuit") held that when an importer failed to claim a duty

preference pursuant to the North American Free Trade Agreement ("NAFTA") at the

time of importation, and failed to claim such a preference within the allotted time before

or after the entry was liquidated "as entered," such "as entered" liquidation did not

involve a Customs decision susceptible to protest as to the NAFTA preference.  423

F.3d 1356, 1363-65 (Fed. Cir. 2005).  Stated more directly, the court found that

Customs could not have made a protestable decision to deny the NAFTA duty

preference in the absence of Customs receiving a claim for such treatment.  *Id*. at 1365;

*cf*., *ARP Materials, Inc. v. United States,* Slip Op. 21-73, 2021 WL 2396329, at *8–13

(CIT June 11, 2021) (denying (i) jurisdiction because (a) jurisdiction was available when

Customs had granted protests covering parallel entries and importer possessed a

facially applicable exclusion from section 301 duties).  Here, when Customs liquidated

as entered VoestAlpine's entries, inclusive of section 232 duties and absent any claim

or request for exclusion, Customs could not be said to have made a protestable

decision to deny such an exclusion.

As previously noted, section 1581(i) grants the court jurisdiction to entertain "any

civil action commenced against the United States . . . that arises out of any law of the

United States providing for-- . . . (2) tariffs, duties, fees, or other taxes on the importation

of merchandise for reasons other than the raising of revenue," and "(4) [the]

administration and enforcement with respect to the matters referred to in paragraphs

(1)–(3) of this subsection and subsections (a)–(h) of this section."  28 U.S.C.

§ 1581(i)(2), (4).  The instant action arises out of the "administration and enforcement"

of the section 232 exclusion process.  *See* Am. Compl. ¶¶ 9–22.  In the absence of any

explicit or otherwise apparent argument as to why the court should not exercise (i)

jurisdiction in the absence of (a) jurisdiction, the court finds that it has statutory

jurisdiction to review Plaintiffs' claims against Commerce pursuant to 28 U.S.C.

§ 1581(i)(4).

## II.   Mootness

### A.  Parties' Contentions

The Government contends that Plaintiffs' claim against Commerce for granting

Exclusion 25363 with an invalid tariff provision "is now moot" given Commerce's grant of

Exclusion 155507.  Def.'s Mot. at 22–23; *see also* Def.'s Reply at 15–16.  According to

the Government, the "corrected and retroactive exclusion is the only relief that this

[c]ourt could order" as relief to Plaintiffs' challenge because "Commerce does not

administer approved exclusions, collect duties, or make refunds."  Def.'s Mot. at 24.

The Government further contends that Plaintiffs' inability "to obtain the benefit of that

exclusion with respect to the two entries in this case [is] due to their own failure to

preserve their remedies."  *Id*.

Plaintiffs contend that this case is not moot because the court retains the

"authority to order reliquidation of entries notwithstanding final liquidation" in a case

arising under the court's (i) jurisdiction.  Pls.' Resp. at 28.

      **B.**    **Analysis**

An action is mooted when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief." *Nasatka*, 58 F.3d at 1580 (citation omitted). "Mootness is a jurisdictional question because the [c]ourt is not empowered to decide moot questions or abstract propositions." *North Carolina v. Rice* 404 U.S. 244, 246 (1971) (citations omitted). Thus, the court must address whether Plaintiffs will be entitled to any relief in addition to the relief obtained through Commerce's approval of Exclusion 155507 in the event they prevail on their claim.

The full scope of the CIT's remedial authority is set forth in complementary statutory provisions in Title 28 of the U.S. Code. Pursuant to section 1585, "[t]he [CIT] shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585. Section 2643 provides that "[t]he [CIT] may enter a money judgment . . . for or against the United States in any civil action commenced under section 1581 or 1582 of this title," *id.* § 2643(a)(1), or may order "any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition," *id.* § 2643(c)(1).

While Plaintiffs' Amended Complaint does not explicitly identify the statutory basis for their cause of action, *see* Am. Compl. ¶¶ 17–22, "the cause of action generally is considered to arise under the [Administrative Procedure Act ("APA")]" when the court

exercises (i) jurisdiction,[13] *Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs and*

*Border Prot.*, 33 CIT 1137, 1148, 637 F. Supp. 2d 1270, 1281 (2009) (citation omitted).

In a case arising under the APA, the court may—and generally will—remand for

reconsideration an agency action found to be "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also,*

*e.g.*, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 172 (1962) (faulting the

lower court for failing to remand unlawful agency action "for further consideration"); *Nat'l*

*Org. of Veterans' Advocs., Inc. v. Sec' of Veterans Affairs*, 260 F.3d 1365, 1379–80

(Fed. Cir. 2001) (remanding agency action for further consideration); *Comm.*

*Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 44

CIT __, __, 483 F. Supp. 3d 1253, 1271–73 (2020) (same).

Accordingly, the appropriate remedy for Commerce's alleged improper grant of

Exclusion 25363 would be to remand that determination to Commerce for

reconsideration consistent with the agency's regulations and procedures.  *See, e.g.*, 28

U.S.C. § 2643(c)(1) (providing for orders of remand); *Burlington*, 371 U.S. at 172.  The

relevant regulations and procedures indicate that Commerce should have denied

Bilstein's original request so that Bilstein could avail itself of Commerce's resubmission

process in order to obtain an approved exclusion retroactive to the date of Bilstein's

---

[13] The APA provides a cause of action for "final agency action for which there is no
other adequate remedy in a court."  5 U.S.C. § 704.  Pursuant to 5 U.S.C. § 706, the
court must "hold unlawful and set aside agency action . . . found to be . . . arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.
§ 706(2)(A); *see also* 28 U.S.C. § 2640(e) (providing for judicial review pursuant to 5
U.S.C. § 706).

original submission.  *See March Regulations*, 83 Fed. Reg. at 12,110–11; Commerce

FAQs at 25.  Bilstein has, however, already obtained exactly that relief from Commerce

in the form of Exclusion 155507.  *See* Def.'s Mot., Ex. F; Pls.' Resp., Ex. 3 at 5.

Commerce can provide no further relief.

 Plaintiffs argue, nevertheless, that the case is not moot because the court has

the authority to order reliquidation "notwithstanding final liquidation."  Pls.' Resp. at 28.

To support their argument, Plaintiffs cite to *Shinyei*, among other cases.  *See id.*  While

*Shinyei* recognizes the CIT's authority to order reliquidation as a form of relief under

certain circumstances, 355 F.3d at 1312,[14] Plaintiffs fail to develop any arguments

addressing reliquidation as a "form of relief that is *appropriate* in [this] civil action," 28

U.S.C. § 2643(c)(1) (emphasis added); *see also In re Section 301 Cases*, Slip Op. 21-

81, 2021 WL 2799979, at *17 n.14 (CIT July 6, 2021) (Barnett, C.J., dissenting) ("What

constitutes 'appropriate relief' is a case-specific determination.").

 Plaintiffs' failure to pursue available remedies compels the court to conclude that

reliquidation would not constitute an appropriate form of relief.[15]  First, Plaintiffs did not

---

[14] *Shinyei* held that the CIT retained (i) jurisdiction over Shinyei Corporation of
America's ("Shinyei") APA claim challenging Commerce's liquidation instructions issued
after litigation regarding an administrative review of the antidumping duty order
notwithstanding Customs' liquidation of Shinyei's entries.  355 F.3d at 1305–12.  In
recognition of the CIT's "broad remedial powers," *id.* at 1312 (citing 28 U.S.C. § 2643
(2000)), the Federal Circuit concluded that, in that case, reliquidation was "easily
construed" as an appropriate form of relief, *id.*

[15] Plaintiffs assert that "[i]f BIS had denied the exclusion at the outset, . . . Bilstein would
have filed a new exclusion request before the November 12, 2018 entr[ies]."  Pls.' Resp.
at 31.  It is, however, unclear whether the denial would have apprised Bilstein of the
need to correct the entirety of the provision or merely to fix the final four digits appended

seek to apply Exclusion 25363 to the subject entries, Def.'s Mot., Ex. C, suggesting they were aware the exclusion could not have applied to their entry, and yet they took no immediate remedial action.  While CBP would have been required to reject the exclusion, that rejection would have alerted Plaintiffs to the error and afforded Plaintiffs time to address the issue.[16]  Instead, Plaintiffs failed to take any steps concerning Exclusion 25363 until roughly one year after Commerce's approval of that exclusion and the exclusion was set to expire—or already had expired.  *See id.*, Ex. B (Exclusion 25363, dated September 28, 2018); Pls.' Resp. at 15 (stating that Plaintiffs sought advice from Commerce after discovering the error in "September 2019");[17] *March Regulations*, 83 Fed. Reg. at 12,111 (exclusions approved for one year); Commerce FAQs at 12 (exclusions granted for one year "or until all excluded product volume is

---

to an otherwise valid six-digit subheading covering flat-rolled and hot-rolled steel.  *See March Regulations*, 83 Fed. Reg. at 12,110 (amending 19 C.F.R. pt. 705 to make exclusions product-specific).  Further, had Bilstein been diligent in uncovering its error in the months prior to entry, it could have submitted a new exclusion request with correct information and subsequently requested retroactive application via PSC or protest in the event Commerce failed to approve the new request before entry.  *See* Proc. 9711, cl. 7 (amending Proclamation 9705 to provide for retroactive relief for exclusions requested on or before, but granted after, the date of entry); CSMS # 18-000352 (providing information consistent with Proclamation 9711).

[16] Plaintiffs state that they did not attempt to apply Exclusion 25363 to the subject entries "because the HTSUS number in the exclusion did not and could not match the HTSUS number in . . . the entries."  Pls.' Resp. at 15.  This statement contradicts Plaintiffs' assertion that they did not learn of the error in Exclusion 25363 until 10 months later, in September 2019.  *See id.*  In any case, Plaintiffs awareness of the need to obtain a valid exclusion no later than November 2018 underscores their lack of diligence.

[17] Plaintiffs do not specify when they contacted BIS following their discovery of the error in September 2019.  *See id.*; Pls.' Surreply at 6 (stating generally that "Plaintiffs attempted to rectify the error in the exclusion when they learned of it in 2019").

imported (whichever comes first")).  Plaintiffs therefore bear at least substantial
responsibility for their failure to secure a valid exclusion within the time necessary for
the exclusion to apply to the subject entries.  Additionally, Plaintiffs failed either to
request an extension of liquidation or to protest administratively the liquidation of the
subject entries in order to prevent finality of liquidation while they sought to work with
BIS to resolve the error.  *See, e.g.*, CSMS # 18-000352 (explaining that importers must
protest liquidation in order to benefit from an exclusion approved post-entry);  *supra*
note 12 (discussing Customs' use of protests as an administrative mechanism to avoid
finality); 19 C.F.R. § 159.12(a)(1)(ii) (2017) (permitting an importer to request a one-
year extension of liquidation for good cause).[18]  These steps were available given
Plaintiffs' discovery of the error in Exclusion 25363 before liquidation, *see* Pls.' Resp. at
15, and therefore well before the end of the 180-day protest period, *see* 19 U.S.C. §
1514(c)(3)(A).

Plaintiffs' clear lack of diligence stands in contrast to the plaintiff in *Shinyei*.
There, the Federal Circuit observed that "Shinyei cannot be described as a party that
has slept on its rights" because it first sought "a writ of mandamus ordering liquidation of
its entries at the [lower] rate it thought it was entitled to" and, following liquidation at the
higher rate, amended its complaint" to assert a claim against Commerce for violating 19
U.S.C. § 1675(a)(2)(B) in the agency's preparation of the liquidation instructions.

---

[18] CSMS # 42566154 also informed importers of the availability of a one-year extension
of liquidation for pending exclusion requests.  Although CBP issued CSMS # 42566154
in May 2020, roughly one month after CBP's liquidation of the subject entries became
final in April 2020, CBP's regulation was in effect at all relevant times.

*Shinyei*, 355 F.3d at 1309.  The Federal Circuit rejected the CIT's concern that "allowing Shinyei's action to proceed" would permit "the revival of 'otherwise moot' claims."  *Id.* at 1310.  But that is precisely what would happen here if the court permitted Plaintiffs' action to proceed notwithstanding Plaintiffs' failure to take all steps necessary to secure its rights to an exclusion and to do so in a timely fashion.[19]

In sum, Plaintiffs commenced an action contesting allegedly unlawful final agency action by Commerce.  Am. Compl. ¶¶ 11–22.  Plaintiffs have obtained all the relief available to them from Commerce.  *See* Def.'s Mot., Ex. F.  Plaintiffs' failure to pursue its available administrative remedies renders reliquidation an inappropriate form of relief, obviating Plaintiffs' claims against mootness.  Plaintiffs' claim is moot because the court could not provide any relief beyond that already obtained from Commerce and the case must be dismissed.

---

[19] Since *Shinyei*, the Federal Circuit has concluded that an importer is not entitled to reliquidation by way of a writ of mandamus when the importer "failed to avail itself of . . . alternative remedies."  *Mukand Int'l Ltd. v. United States*, 502 F.3d 1366, 1369 (Fed. Cir. 2007).  In *Mukand*, an importer, Mukand International, Ltd. ("Mukand") sought "a writ of mandamus requiring Commerce (1) to issue a scope determination, (2) to suspend any further liquidation, and (3) to reliquidate the entries of stainless steel . . . and refund all of Mukand's antidumping duties on those entries."  *Id.* at 1368.  During the pendency of the action, Commerce initiated a scope inquiry and found "that Mukand's entries were not covered by the antidumping duty order."  *Id.*  In finding that Mukand was not entitled to reliquidation, the Federal Circuit distinguished the case from the facts of *Shinyei*, where "the importer [had] diligently pursued its rights."  *Id.* at 1370.  Mukand, in contrast, slept on its rights when it failed to "compel Commerce to institute a scope ruling for more than one year from the date it claims to have had a right to continued suspension" or "file[] a mandamus action to compel Commerce to institute a scope inquiry and order the continued suspension."  *Id.* at 1369.  So too here, for all the reasons discussed above, Plaintiffs slept on their rights and those failings are relevant to the court's finding that reliquidation would not be an appropriate form of relief pursuant to 28 U.S.C. § 2643(c)(1).

Consol. Court No. 20-03829                                    Page 29

### CONCLUSION AND ORDER

For the foregoing reasons, the Government's motion to dismiss for lack of subject

matter jurisdiction is **GRANTED**.  Judgment will be entered accordingly.


                                          /s/      Mark A. Barnett____
                                          Mark A. Barnett, Chief Judge

Dated:  __August 26, 2021_____
            New York, New York